**TIPPECANOE EDUCATION ASSOCIA-TION, Sarah Spencer, and Patricia Ferry, Appellants–Defendants,**

v.

**TIPPECANOE SCHOOL CORPORATION, Appellee–Plaintiff.**

No. 79A02–9711–CV–808.

Court of Appeals of Indiana.

Oct. 5, 1998.

Richard J. Darko, Mary Jan Elapointe, Lowe Gray Steele & Darko, Indianapolis, for Appellants–Defendants.

Stephen R. Pennell, Karen Orr McClure, Stuart & Branigin, Lafayette, for Appellee–Plaintiff.

## OPINION

SULLIVAN, Judge.

Appellants, Tippecanoe Education Association (Association), Sarah Spencer (Spencer), and Patricia Ferry [1] (collectively Teachers), appeal the order of the trial court awarding summary judgment in favor of the Tippecanoe School Corporation (School).

We affirm.

Upon appeal, Teachers contend that the School failed to comply with applicable procedure in completing Spencer's Evaluation Forms. In addition, they argue that the School failed to provide Spencer with a written statement of the reasons why the Board declined to renew her contract.

In May 1994, the Association and the School finalized a collective bargaining agreement (Agreement). The Agreement enumerated the rights afforded teachers, as well as the procedures governing teacher grievances. Article V incorporated into the Agreement, additional matters developed by the Association and the School. Article V provides:

> "Effective with the 1995–96 school year, the forms, procedures, deadlines, and process which were jointly developed by the TEA [Association] and TSC [School] will become part of this contract. The contents of any evaluation or the classification

---

1. Although Ferry waives her claim for reinstatement and back pay, she remains a nominal party to this action.

of any teacher will not be subject to the grievance procedure of this contract." Record at 37.

Pursuant to this provision, the Tippecanoe School Corporation Teacher Evaluation Form (Evaluation Form) became a part of the contract. This Evaluation Form mandated that when an evaluator indicated that the evaluatee did not meet the specified standards, "he/she must identify the specific performance behaviors which he or she observed which do not meet the standards." Record at 219.

As a second grade teacher at the Mayflower School, Spencer was covered by the Agreement. On December 22, 1995, she received the first of two Evaluation Forms based upon classroom observation prepared by the principal of the Mayflower School, Timothy Schirack (Schirack). This Evaluation Form indicated that Spencer did not satisfy three core standards: (1) "The teacher utilizes positive classroom management"; (2) "The teacher communicates clearly and correctly"; and (3) "The teacher develops course/unit objectives and establishes sequential steps for their attainment." Record at 202–03.

On February 26, 1996, Schirack furnished Spencer with her second Evaluation Form, which indicated substandard performance in seven standards. The areas included: (1) "The teacher utilizes positive classroom management"; (2) "The teacher attempts to increase the students' interest and intellectual development"; (3) "The teacher treats all students and students' ideas as valuable"; (4) "The teacher helps students become useful and productive"; (5) "The teacher develops course/unit objectives and establishes sequential steps for their attainment"; (6) "The teacher establishes definite standards for evaluating student work"; and (7) "The teacher maintains good professional relations with the school community." Record at 219–23. In each of these respective sections on the Evaluation Form, Schirack used descriptors [2] to indicate more specific areas in need of improvement. Schirack also attached an additional page to the Evaluation Form,

which included further observations regarding Spencer. The Evaluation Form and the attachment were signed and dated by both Schirack and Spencer.

On March 22, 1996, Spencer filed a grievance with Schirack, contending that he improperly completed the two Evaluation Forms. Specifically, Spencer alleged that the Evaluation Forms were defective because they failed to state the specific performance behaviors which prompted Schirack to conclude that her efforts were deficient. Schirack denied this grievance on March 28, 1996. On April 11, 1996, Superintendent Wood informed Spencer that the Board of School Trustees of Tippecanoe School Corporation (Board) voted not to renew her contract. Thereafter, on April 15, 1996, Wood denied her grievance regarding the Evaluation Forms.

On April 24, 1996, Wood complied with Spencer's request that he provide her with a written statement of the reasons prompting the Board's decision not to renew her contract. On May 3, 1996, the Association demanded arbitration of Spencer's grievance. A hearing was held on December 16, 1996. In his opinion dated March 24, 1997, the arbitrator concluded that Schirack failed to cite specific performance behaviors on the Evaluation Forms. In addition, he determined that Superintendent Wood failed to provide Spencer with the reasons prompting her non-renewal. As a result, he ordered that she be reinstated with back pay.

Subsequently, the School petitioned the trial court on April 16, 1997, to vacate the award of the arbitrator. Both parties submitted motions for summary judgment. On August 13, 1997, the trial court granted summary judgment in favor of the School, concluding that the arbitrator exceeded the scope of his authority.

## I. COMPLIANCE WITH APPLICABLE PROCEDURE

Teachers argue that Schirack did not comply with applicable procedure by failing to inform Spencer of the specific performance

2. Descriptors were developed by the Association and the School to serve as "examples of terms used to define a standard and determine a teacher's teaching performance." Record at 194.

behaviors prompting her evaluations of sub-standard performance. Accordingly, they urge this court to reverse the trial court's award of summary judgment for the School and enter summary judgment in their favor, thereby affirming the arbitrator's decision.

Upon appeal from an award of summary judgment, this court utilizes the same standard applied by the trial court. *Fawley v. Martin's Supermarkets, Inc.* (1993) Ind.App., 618 N.E.2d 10, 12, *trans. denied.* This court will determine whether any genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. *Id.* "Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court." *Sharp v. Town of Highland* (1996) Ind.App., 665 N.E.2d 610, 613–14, *trans. denied.*

Our initial inquiry is whether the arbitrator possessed the authority to grant relief because Schirack failed to comply with applicable procedure [3] when completing the Evaluation Forms. The precise issue is whether Schirack identified the specific performance behaviors in each category in which Spencer received a negative evaluation.

As previously noted, Spencer received two Evaluation Forms from Schirack. However, pursuant to Article VI, Section 1.B. of the Agreement, Spencer waived any grievance arising from the December 22, 1996 Evaluation Form by failing to file a formal grievance within thirty days of that date. Spencer did not file a formal grievance until March 22, 1996. Therefore, this court must conclude that the first Evaluation Form comports with applicable procedure because Spencer is precluded as a matter of law from arguing that the comments listed by Schirack [4] do not constitute specific performance behaviors.

Consequently, we must next examine whether Schirack's comments on the February 26, 1996 Evaluation Form were sufficient as a matter of law to constitute specific performance behaviors. Initially, we note that, contrary to Teachers' arguments, an evaluator is not precluded from using descriptors to comply with applicable procedure. Rather, descriptors may be used when they accurately describe the specific performance behaviors of the evaluatee.[5]

■ Because applicable procedure requires that the evaluator identify the specific performance behaviors for each standard which the evaluatee does not satisfy, we must scrutinize each of the seven areas in which Spencer's efforts were deemed to be deficient.

STANDARD 1: "The teacher utilizes positive classroom management." Record at 219.

> Evaluator's Comments: "Improvement is needed in establishing parameters for student behavior, managing disruptive behavior constructively and using rules/routine at developmental levels." Record at 219.

> Evaluator's Attached Narrative: "Mrs. Spencer is still having difficulty with behavior management. Students do not respond well to her requests for improvement. Mrs. Spencer did not promote self-discipline or remind the students of the rules. During my visits students have routinely disrupted other students, interrupted the instruction, or simply ignored the instruction that was taking place." Record at 225.

It is our analysis that Schirack specifically identifies which of Spencer's omissions prompted the negative evaluation, and also

3. We note that, pursuant to Article V of the Agreement, Spencer may not challenge the content of either of her evaluations. However, in order to determine whether the applicable procedure was followed, this court must examine Schirack's comments to ascertain whether they describe specific performance behaviors prompting the negative evaluations.

4. Schirack attached a narrative to the first Evaluation Form detailing his observations of Spencer.

5. To hold otherwise would impose upon evaluators the obligation to ensure that none of their comments mirrored descriptor language, as similarities might void the evaluation. This result would be inconsistent with the intent which enumerated various descriptors to be utilized in the evaluation process, and which were designed to "define a standard and determine a teacher's teaching performance." Record at 194.

notes the effect of her omissions upon her students. We therefore conclude that this aspect of the evaluation was sufficient as a matter of law.

STANDARD 2: "The teacher attempts to increase the students' interest and intellectual development." Record at 220.

Evaluator's Comments: "Improvement is needed in gaining the attention of students, checking for understanding, holding the attention of students." Record at 220.

Evaluator's Attached Narrative: "Mrs. Spencer's students do not display initiative or assume responsibility for learning." Record at 225.

■ It is our analysis that although arguably vague, these comments notify Spencer that her efforts to engage and stimulate her students are inadequate. This portion of the evaluation is therefore sufficient as a matter of law.

STANDARD 3: "The teacher treats all students and students' ideas as valuable." Record at 220.

Evaluator's Comments: "Improvement is needed in creating a pleasant learning climate." Record at 220.

Evaluator's Attached Narrative: "Several students in Mrs. Spencer's class have developed a poor image of school. They have been apprehensive about school attendance and have lost their love of school." Record at 225.

■ Although barely adequate, we conclude that Schirack's comments advise Spencer that she must provide positive reinforcement to all students in her class, as her current practices have alienated many of her students. This part of the evaluation is therefore sufficient as a matter of law.

STANDARD 4: "The teacher helps students become useful and productive." Record at 220.

Evaluator's Comments: "Improvement is needed in promoting student self-control and positive self-image. Students need to display initiative and assume responsibility." Record at 220.

Evaluator's Attached Narrative: "Several students in Mrs. Spencer's class have developed a poor image of school. They have been apprehensive about school attendance and have lost their love of school." Record at 225.

■ Similar to Standard 3, the comments listed here reinforce the notion that Spencer fails to encourage her students sufficiently. We therefore conclude that this part of the evaluation is sufficient as a matter of law.

STANDARD 5: "The teacher develops course/unit objectives and establishes sequential steps for their attainment." Record at 221.

Evaluator's Comments: "Improvement is needed in selecting appropriate activities and planning an appropriate use of time." Record at 221.

Evaluator's Attached Narrative: "Mrs. Spencer needs to become more selective in her materials and activities. As she plans she needs to be more aware of her use of time. Students working independently on projects can provide for special opportunities to evaluate student work. One particular lesson observed found Mrs. Spencer making no progress on the objective for the entire 30 minutes. Other lessons found student time being under utilized." Record at 225.

■ After stating that Spencer failed to make good use of her time, Schirack cites a specific example to support his allegation and offers a suggestion for her improvement. We therefore conclude that this aspect of the evaluation is sufficient as a matter of law.

STANDARD 6: "The teacher establishes definite standards for evaluating work." Record at 222.

Evaluator's Comments: "Improvement is needed in scheduling time for one-to-one conferences." Record at 222.

Evaluator's Attached Narrative: "Mrs. Spencer did not use time wisely for one-to-one conferences. She expressed great difficulty with this procedure." Record at 225.

■ The descriptor utilized by Schirack accurately and succinctly describes the specific performance behavior. It is therefore sufficient as a matter of law.

STANDARD 7: "The teacher maintains good professional relations with the school community." Record at 223.

> Evaluator's Comments: "Improvement is need[ed] in maintaining positive relationships with all school personnel, maintaining a supportive relationship with all students and maintaining rapport with parents." Record at 223.

> Evaluator's Attached Narrative: "Mrs. Spencer has created problems within the staff due to her lack of control of the students. Mrs. Spencer has indicated she has difficulty with the concept of being supportive of students and disciplining students." Record at 225.

■ Schirack identifies the specific behavior which has created problems. It is sufficient as a matter of law.

■ We acknowledge that the care with which Spencer's Evaluation Forms were completed was not a model to be followed in the future. However, we are not willing to adopt a strict interpretation of the aforementioned procedural requirement such that the School encounters significant difficulties in terminating the employment of teachers it reasonably deems unsatisfactory. Accordingly, because Schirack did not violate applicable procedure in completing the Evaluation Forms, the arbitrator should have declined to rule on the Board's failure to renew Spencer's contract pursuant to Article VI, Section 5 of the Agreement.[6]

## II. STATEMENT OF BOARD'S REASONING

Spencer also argues that Superintendent Wood failed to provide her with a written statement of the reasons prompting the Board's decision not to renew her contract. Wood provided Spencer with the following written explanation:

> "In Executive Session on April 10, 1996, I stated to the Board of School Trustees that I would be recommending the non-renewal

of your teaching contract. I indicated to the Board that it was relevant to the best interest of the school corporation to take such action because you had lost the confidence of your principal and superintendent and that the administration could fill your position with a teacher who could better serve the needs of Mayflower Mill Elementary School. Later that evening at the regular public meeting of the Board of School Trustees, the Board voted to non-renew your contract as a non-permanent teacher in this school corporation." Record at 246.

Spencer contends that this response is not sufficient because it merely reiterates Wood's statements to the Board, not the Board's reasons for declining to renew her contract.

■ Pursuant to I.C. 20–6.1–4–14(b)(1) (Burns Code Ed. Repl.1997), "[b]efore a teacher is refused continuation of the contract … the governing body or the superintendent of the school corporation shall provide the teacher with a written statement which may be developed in an executive session and which is not a public document, giving the reasons for the noncontinuation of the teacher's contract." This obligation is a condition precedent to a valid non-renewal of a teacher's contract. *Lewis v. Bd. of School Trustees* (1995) Ind.App., 657 N.E.2d 180, *trans. denied; Tishey v. Bd. of School Trustees* (1991) Ind.App., 575 N.E.2d 1018, 1020, *trans. denied.*

Article IV, Section 1 of the Agreement asserts that "[i]f the decision is to discontinue the teacher's contract, the teacher shall be provided a statement of the reasons for the discontinuance and all other rights set forth in I.C. 20–6.1–4–14." Record at 31.

■ In the present case, Wood complied with the statute by providing Spencer with a sufficient explanation of the reasons prompt-

---

**6.** The relevant portion of Article VI, Section 5 provides:
"A. The Arbitrator's powers shall be limited to deciding whether the Board has violated the express articles or sections of this Agreement. However, the Arbitrator shall have no power:

\* \* \*

3. to rule on any of the following except to the extent that this Agreement may be violated:
a. the termination of services or failure to re-employ any teacher." Record at 39–40.

ing her non-renewal.[7] The rationale stated in the letter is consistent with other feedback she received, and Spencer presents no evidence that the Board did not rely upon these reasons in determining not to renew her contract. Moreover, the statute specifically provides that only the governing body or superintendent may provide the written explanation. It is important to note that the requisite explanation may be provided either by the Board *or* by the superintendent. As the superintendent is not a member of the Board, he is not privy to discussions among its members and can only relate to the teacher the substance of his recommendation. Accordingly, we decline to adopt an interpretation of the statute that effectively eliminates the ability of a superintendent to respond to teacher requests.

Moreover, because the language of Article IV, Section 1 of the Agreement expressly directs the reader to I.C. 20–6.1–4–14, we conclude that the former affords no greater rights than the latter.

The judgment is affirmed.

BAKER, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

The teachers are members of a bargaining unit that specifically negotiated the forms, procedures, deadlines and process for a system of teacher performance evaluation. By the terms of the resulting agreement, an evaluator who concluded that a teacher did not meet performance standards was required to "identify the *specific performance behaviors* which he or she observed which do not meet the standards." *Record* at 18 (emphasis added).

Contrary to the requirement to identify specific behaviors, the evaluations here at issue set forth only the evaluator's generalized conclusions, leaving the teachers to speculate as to what behavior led to the conclusions and as to what they could do to correct

the situation. The arbitrator found that the omissions by the evaluator were "egregious" and that the evaluator's action plans "were almost a joke ....[which] ... provided no help at all to the teachers." *Record* at 28. These findings led the arbitrator to express wonderment at whether the evaluator cared to help teachers generally or "simply did not wish to help these two teachers in particular." *Record* at 28.

The arbitrator's findings, conclusions, and wonderment notwithstanding, the majority, while acknowledging that the evaluations were "arguably vague," *opinion* at 245, and "not a model to be followed in the future," *id.* at 246, finds the evaluations sufficient as a matter of law. To the contrary, I believe that as a matter of law they are insufficient. Alternatively, the question of whether a particular evaluation is sufficiently specific is a question of fact, the resolution of which should be left to the trier of fact. In either event, I would reverse the decision of the trial court and reinstate the arbitrator's award.

---

7. Spencer does not argue that the explanation provided by Wood fails to state specific acts or

omissions prompting the non-renewal. *See Tishey, supra,* 575 N.E.2d at 1019–20.